IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN HARDNEY,

      Plaintiff,                  No. CIV S-02-1518 FCD JFM P

    vs.

T. L. ROSARIO, et al.,

      Defendants.[1]             <u>PRETRIAL ORDER</u>

_____/

      Pursuant to court order the parties have submitted pretrial statements. Upon review of the statements and the remainder of the file, and good cause appearing therefor, this court makes the following findings and orders:

<u>JURISDICTION/VENUE</u>

      Jurisdiction is predicated upon 28 U.S.C. § 1331 arising under 42 U.S.C. § 1983. Venue is proper. There is no dispute over either jurisdiction or venue.

<u>JURY/NON-JURY</u>

      Both parties have timely requested trial by jury.

---

[1] All of plaintiff's claims, except those raised under the Eighth Amendment, were dismissed by the district court's order filed November 26, 2003. Defendants Batchelor and Wasielewski were granted summary judgment on March 8, 2005.

1

UNDISPUTED FACTS[2]

California State Prison - Sacramento includes three facilities, Facilities A, B and C. A-Facility houses administrative segregation ("ad-seg"), special needs and mentally disabled inmates. The B- and C-Facilities were composed of general population Level IV inmates with a 180 degree designation.

On January 4, 2002, about ten or eleven inmates assaulted several correctional officers in the B-Facility dining room at California State Prison - Sacramento (CSP-Sac). As a result of the incident, staff members were taken to Mercy San Juan Hospital for treatment. The injuries were abrasions, lacerations and stab wounds. The incident was classified as an attempted murder of staff. On January 7, 2002, defendant Rosario signed the initial notification placing the institution on a state of emergency. Defendant Rosario signed the initial notification on behalf of Defendant Pliler. In addition, defendant Rosario concurred with defendant Pliler that placing the institution on lock down was necessary to secure the safety and security of the institution due to the attempted murder of staff on January 4, 2002. Sometime after January 7, 2002, defendant Rosario became the Acting Warden of CSP-Sac while defendant Pliler was absent on special assignment.

As part of defendant Rosario's duties as Acting Warden, he presided over the lock down committee meetings that occurred twice weekly. The purpose of the meetings was to develop a plan to remove the restrictions imposed on the inmates by a lock down in a manner that ensured the safety and security of staff and inmates.[3] As a part of this process, the committee

---

[2] These undisputed facts are taken from the December 9, 2004 findings and recommendations.

[3] Although plaintiff disputed the purpose of this committee, he had no personal knowledge of the committee as he was not a member of the lock down committee nor did he attend any of the committee's meetings. Plaintiff argued that an improper purpose could be inferred from an inmate's death, cell fights and mental and emotional injuries to other inmates resulting from the lock downs, but he offered no evidence to support this theory. Plaintiff must present evidence to enable a jury to find his inference is more likely true than another in order to create a genuine disputed fact based on circumstantial evidence. Bergene v. Salt River Project

considered a number of factors, including information regarding the cause of the violence that initiated the lock down, information regarding any threats of violence, the effect the lock down restrictions imposed on the inmates, and the effects the violence had on staff. Defendant Vance was a member of the lock down committee between January and May of 2002.

After considering all the information available to the lock down committee and the opinions offered by the other committee members, it was defendant Rosario's responsibility, as Acting Warden, to make the final decision on the plan to safely take the institution off lock down status. It is the responsibility of the staff and inmates to follow the plan.

Shortly after the initial lock down was imposed on January 4, 2002, inmates on B Facility were allowed a five minute shower every other day and were allowed to purchase stamps and stationery from the canteen that was delivered to their cells.[4] Plaintiff admits that Table One, appended as Exhibit A to Defendants' Statement of Undisputed Facts, filed in support of their motion for summary judgment, is a summary of the restrictions for the programs between January 4 and February 4, 2002, but disputes the meaning of each box contained therein. However, plaintiff has provided no evidence to support his position in that regard.

On January 29, 2002, plaintiff filed an inmate appeal seeking modification of the restrictions for inmates not involved in the January 4, 2002 incident. On February 26, 2002, staff person Sims denied plaintiff's appeal. On March 6, 2002, plaintiff submitted his grievance to the second level of review. Defendant Wasielewski investigated the appeal, concluded it was "insufficient" and thereafter the appeal was denied by defendant Pliler.

On February 22, 2002, an inmate seriously battered a correctional officer during

---

Agricultural Improvement & Power Dist., 272 F.3d 1136, 1142 (9th Cir. 2001)(circumstantial evidence supporting an inference must be specific and substantial).

[4] Plaintiff denies these inmates were granted access to clinic on an emergency basis, but has provided no evidence that he or any other inmate required emergency medical services but were denied access to said medical services during the lock down shortly after January 4, 2002. Plaintiff has thus failed to demonstrate a denial of access to medical services on an emergency basis.

3

showers in C-Facility.[5]  In response, B and C-Facilities were placed on more restricted programming similar to that imposed on January 4, 2002; A-Facility remained on normal programming.

On March 18, 2002, plaintiff submitted his appeal to the third and final level of administrative review.  Defendant Batchelor denied the appeal.  Plaintiff states that at the time plaintiff submitted his appeal to the final level of administrative review, he had been confined to his cell twenty-four hours a day for seventy-four days.  Defendants do not deny that calculation.

In late March or early April 2002, plaintiff was permitted to get some sunlight and outside activity two hours a day every other day "in a five weekday period."  (Complaint, filed July 15, 2002, at 7.)  By about April 10, 2002, almost all the inmates on B Facility had returned to normal programming, with the exception of the inmates who had a group affiliation with the inmates involved in the January 4 incident.  Plaintiff admitted that Table Three was a summary of the restrictions for the programs between February 22, and May 2, 2002, but disputed certain portions as vague.  Plaintiff provided no evidence in support of his position as to Table Three.

Plaintiff was provided outside activity two hours a day every other day for three or four weeks, until May 8, 2002.  On May 8, 2002, an African-American inmate stabbed a correctional officer in the #4 Dining Room of B-Facility.  The institution was again placed on lock down restrictions on B Facility.  Table Four provided a summary of the restrictions for the programs between May 8 and August 1, 2002, but plaintiff disputed the portions of the table under "move" and "med."  Plaintiff stated that at the time he prepared his complaint on July 9, 2002, he had been confined to his cell twenty-four hours a day for sixty-seven days.  Defendants did not deny that calculation.

/////

---

[5] Plaintiff states he does not have sufficient information to admit or deny this statement, but claims it is irrelevant to his Eighth Amendment claim.  However, because the assault on C-Facility impacted the restrictions applicable to plaintiff in B-Facility, this information is relevant.  Plaintiff has provided no evidence to refute this claim so the court treated it as undisputed.

It is undisputed that plaintiff was not involved in any of the assaults or altercations that led to the lock down restrictions.

Plaintiff contended that while he was restricted to his cell in July of 2002, temperatures ranged from 99 to 110 degrees for a two week period. Defendants do not dispute the existence of high temperatures during a portion of that lock down period.

DISPUTED FACTUAL ISSUES

1. Whether or not plaintiff was taking psychotropic "hot" medications during a two week period in July of 2002 when temperatures ranged from 99 to 110 degrees and plaintiff was restricted to his cell, and, if he was, whether defendants were deliberately indifferent by failing to follow hot meds protocol and provide plaintiff with access to showers or ice water.[6] (See December 9, 2004 Findings and Recommendations at 14-16.)

2. Whether plaintiff was deprived of the minimal civilized measure of life's necessities by defendants' failure to provide him with outdoor exercise.

3. Whether defendants knew of and disregarded an excessive risk to Plaintiff's health or safety because defendants failed to provide plaintiff outdoor exercise.

4. Whether emergency conditions at CSP-SAC made it impossible to accommodate plaintiff's need for outdoor exercise during one or more of the periods at issue in this action.

5. Whether due to the severity of emergency conditions during one or more of the periods at issue in this action, defendants' duty to protect plaintiff took precedence over accommodating his need for outdoor exercise.

6. Whether plaintiff suffered any cognizable injury.

7. The extent of plaintiff's damages, if any.

---

[6] A number of times plaintiff has referred to other inmates with regard to his claim that his health was at risk while he was confined to his cell in extreme heat while taking hot medications. (Pl.'s Pretrial Stmt. at 8, 9, 10.) Plaintiff is cautioned that this action is not a class action; his claims are limited to his personal claims, not those of other inmates.

5

DISPUTED EVIDENTIARY ISSUES

The admissibility of the following evidence will be disputed at trial by plaintiff:

1. Plaintiff disputes the admissibility of evidence pertinent to A and C Facilities because each facility is separate from the other and the incidents that occurred on B Facility during the relative time frame were not connected nor did they involve other prisoners housed on either A and C Facility. Plaintiff contends such evidence is irrelevant, unnecessary or misleading and would unnecessarily confuse or mislead the jury and delay the trial.

2. Plaintiff objects to any evidence submitted by defendants based upon a theory that B Facility inmates are more violent than A and C Facility inmates for the same reasons listed in paragraph 2 above.

3. Plaintiff objects to any evidence submitted by defendants concerning inmate witnesses' criminal conduct and record and any prison misconduct violations to avoid misleading or confusing the jurors from the facts of the instant case.

4. Plaintiff reserves objections to specific testimony and exhibits until plaintiff has had the opportunity to hear such testimony and examine such exhibits.

The admissibility of the following evidence will be disputed at trial by defendants:

1. Defendants object to any evidence submitted by plaintiff based upon or containing inadmissible hearsay or that is irrelevant, immaterial or incompetent.

2. Defendants reserve objections to specific testimony and exhibits until Defendants have had the opportunity to hear such testimony and examine such exhibits.

3. Should plaintiff or any other incarcerated witnesses testify, defendants will seek to impeach such witnesses by presenting evidence of prior felony convictions and/or specific instances of conduct demonstrating a propensity to lie.

4. Generally, expert medical testimony is necessary to establish medical deliberate indifference. Plaintiff has not identified an expert medical witnesses, and there is nothing in the record indicating that he is qualified as an expert medical witness. In the absence

of proof from a medical expert, plaintiff lacks competent medical evidence to make out a prima facie case of medical deliberate indifference.

SPECIAL FACTUAL INFORMATION

  None applicable.

RELIEF SOUGHT

  1. In the complaint, plaintiff seeks compensatory damages of $10,000.00 per defendant.

  2. In addition, plaintiff seeks punitive damages of $10,000.00 per defendant and injunctive relief requiring that defendants modify their lockdown policy to enable plaintiff and other inmates on B-Facility at CSP-Sacramento IV to have access to sunlight, fresh air and the ability to exercise outside for the amount of hours specified by law and/or declared by the United States Supreme Court.

  3. Plaintiff also seeks declaratory relief requiring a statement that the "physical, emotional and mental abuse, stress and anguish of the plaintiff from the unreasonable [and] unconstitutional policy implemented by defendants Rosario, Pliler and Vance that restricted and continues to restrict plaintiff to be totally confined to his cell 24 hours a day for months constitutes cruel and unusual punishment violating the Eighth Amendment and California Penal Code §§ 147 & 2652.

POINTS OF LAW

  The parties shall brief the elements, standards and burden of proof of the claims herein presented by plaintiff under the applicable constitutional amendment, statutes and regulations. Trial briefs shall be filed with this court no later than ten days prior to the date of trial in accordance with Local Rule 16-285.

ABANDONED ISSUES

  No issues have been abandoned.

/////

1 WITNESSES

Plaintiff anticipates calling:

1. Inmate Frye, CDC #19311, CSP-LAC, 44750 - 60th Street West, Lancaster, California 93536.

2. Inmate David Player, CDC #P-87466, Pelican Bay State Prison, 5905 Lake Earl Drive, P.O. Box 7000 (Administration), Crescent City, California 95531-7000.

Defendants anticipate calling:

1. Defendant T. Rosario, percipient and expert witness designated pursuant to Fed. R. Civ. P. 26(a)(2).

2. Defendant S. Vance, percipient and expert witness designated pursuant to Fed. R. Civ. P. 26(a)(2).

3. Defendant C. Pliler, percipient and expert witness designated pursuant to Fed. R. Civ. P. 26(a)(2).

4. Douglas C. Peterson, M.D., expert witness designated pursuant to Fed. R. Civ. P. 26(a)(2).

5. CDCR Custodian of Records.

Defendants reserved the right to call additional witnesses, including expert witnesses, as may be appropriate, at the time of trial.

Each party may call any witnesses designated by the other.

A. No other witness will be permitted to testify unless:

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the pretrial conference, or

(2) The witness was discovered after the pretrial conference and the proffering party makes the showing required in "B," below.

/////

B.      Upon the post pretrial discovery of witnesses, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify.  The witnesses will not be permitted unless:

(1) The witnesses could not reasonably have been discovered prior to pretrial;

(2) The court and the opposing party were promptly notified upon discovery of the witnesses;

(3) If time permitted, the party proffered the witnesses for deposition;

(4) If time did not permit, a reasonable summary of the witnesses' testimony was provided to the opposing party.

EXHIBITS, SCHEDULES AND SUMMARIES

Plaintiff anticipates offering:[7]

1. CDC-602 staff complaint concerning constitutional violations resulting in this civil matter, with supporting declaration signed by inmate witnesses.  CDC Log No. 02-00302.

2. The response by defendants or from other officials concerning the 602 staff complaint Log. No. 02-00302 as shown above, resulting in this civil action.

3. Another CDC 602 complaint by plaintiff seeking medical attention for the injuries, pain and suffering he had sustained during the confinement to his cell at CSP-SAC IV in 2002, resulting in this civil action.  CDC Log No. 02-02440.

4. Newspaper article from the Los Angeles Times, dated February 12, 2006, concerning Federal Judge Thelton Henderson's decision to appoint a "Federal Reviewer" for the State Prisoner's Health Care System that kills one inmate each week through medical

/////

---

[7] In addition to the exhibits listed herein, plaintiff lists several pleadings filed in this action as exhibits.  Those items are not proper exhibits and have not been included herein.

1  incompetence or neglect.  Bill Sillen was appointed in the day-to-day management of the system,
2  as the appointed "Reviewer."
3         5.  Newspaper article from The San Francisco Daily Journal, dated December 16,
4  2002, concerning a federal judge's ruling that "Race-Based Lockdowns are Unconstitutional."
5         6.  Four pages of [mental health progress notes], by medical and mental health
6  staff.
7         7.  Health care request by plaintiff dated 8-14-02, describing depression and
8  anxiety problems.
9         8.  Document showing plaintiff had been prescribed psychotropic medications.
10        9.  Operational Procedure, implementing the Hot Weather Emergency Plan.
11        10.  Warden's job description.
12        11.  Correctional Captain's job description.
13        12.  Deposition of John Hardney.
14        13.  Interrogatories and admissions of defendant Rosario.
15        14.  Memoranda dated from February 4, 2002 up to August 2, 2002 concerning
16  the B-Facility Program status, and/or the deprivation of the program status, that includes "no
17  outside cell movement," exercise time.
18        15.  Interrogatories and admissions by defendant Pliler.
19        16.  Interrogatories and admissions by defendant Vance.
20        17.  Plaintiff's answers and objections to defendants' interrogatories.
21        18.  Memorandum of Decision by the Ninth Circuit Court of Appeals regarding
22  defendants' deliberate indifference toward plaintiff's rights.
23        Defendants anticipate offering :
24        A.  CSP-Sac Incident Report, SAC-FAB-02-01-0008, dated January 4, 2002.
25        B.  CSP-Sac Incident Report, SAC-FAC-02-02-0060, dated February 22, 2002.
26        C.  CSP-Sac Incident Report, SAC-FAB-02-05-0162, dated May 8, 2002.

D.  Program Status Reports dated January 7, 2002, January 15, 2002, January 17, 2002, and February 13, 2002.

E.  CSP-Sac Lockdown Matrix for period from January 4, 2002 to August 28, 2002.

F.  CSP-Sac Lockdown Committee Minutes for period from January 4, 2002 to August 28, 2002.

G.  CSP-Sac Facility B Program Memos for period from January 4, 2002 to August 28, 2002.

H.  CSP-Sac Facility C Program Memos for period from January 4, 2002 to August 28, 2002.

I.  CSP-Sac Routine Medical/Dental Officer Line During State of Emergency Memo dated January 29, 2002.

J.  CSP-Sac Operational Procedure 102, Hot Weather Emergency Plan.

K.  CSP-Sac Cell Movement Record for Inmate John Hardney, CDCR #D-00599, for period from January 4, 2002 to August 28, 2002.

L.  Certification of medical records dated April 17, 2006.

M.  John Hardney Standardized BUS Screening Form, dated August 21, 2001.

N.  John Hardney Medical Records, Physicians Progress Notes for period from January 2002 through December 2002.

O.  John Hardney Medical Records, Physicians Orders for period from January 2002 through December 2002.

P.  John Hardney Medical Records, Outpatient Medication Record for period from January 2002 through February 2003.

Q.  John Hardney Medical Records, Mental Health New Arrival Screening Form, dated August 21, 2001.

R.  John Hardney Medical Records, Placement Chronos, dated April 23, 2002,

and August 26, 2002.

S. John Hardney Medical Records, Mental Health Interdisciplinary Progress Notes for period from January 14, 2002, through August 14, 2002.

T. John Hardney Medical Records, Health Care Services Request dated August 26, 2002.

U. John Hardney Medical Records, Mental Health Interdisciplinary Progress Notes for period from August 26, 2002, through December 18, 2002.

V. John Hardney inmate appeal Log Number SAC-02-02440, together with the institutional first and second level responses.

At the trial confirmation hearing, the court will issue an order as to the exchange of exhibits.

Each party will file any objections to exhibits ten days before trial. Each exhibit not previously objected to will be forthwith received into evidence. Plaintiff will use numbers to mark exhibits; defendant will use letters.

A. No other exhibits will be permitted to be introduced unless:

    1. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not have been reasonably anticipated, or

    2. The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in Paragraph "B," below.

B. Upon the post pretrial discovery of exhibits, the parties shall promptly inform the court and opposing party of the existence of such exhibits so that the court may consider at trial their admissibility. The exhibits will not be received unless the proffering party demonstrates:

    1. The exhibits could not reasonably have been discovered earlier;

    2. The court and the opposing party were promptly informed of their

1    existence;

2    3.  The proffering party forwarded a copy of the exhibit(s) (if physically
3    possible) to the opposing party.  If the exhibit(s) may not be copied the
4    proffering party must show that he has made the exhibit(s) reasonably
5    available for inspection by the opposing party.

6 The parties are directed to bring an original and one copy of each exhibit to trial.  The original
7 exhibit becomes the property of the court for purposes of trial.  The copy is for bench use during
8 trial.

9 DISCOVERY DOCUMENTS

10    Plaintiff anticipates the use of interrogatories and admissions of defendants
11 Rosario, Pliler and Vance, as well as plaintiff's answers to interrogatories propounded by
12 defendants.

13    Defendants anticipate the use of the deposition of John Hardney dated February
14 10, 2004.

15 FURTHER DISCOVERY OR MOTIONS

16    Discovery is closed.

17    Plaintiff and defendants anticipate filing motions in limine.  Motions in limine
18 must be filed seven days prior to the trial.

19 STIPULATIONS

20    At this time the parties have reached no stipulations.  Defendants offered to
21 stipulate to the "undisputed facts" listed in their pretrial statement, and to the admission of their
22 exhibits listed in section XII of their pretrial statement.

23 AMENDMENTS/DISMISSALS

24    None.

25 SETTLEMENT NEGOTIATIONS

26    It appears that a settlement conference is not warranted in this case.

AGREED STATEMENTS

    None.

SEPARATE TRIAL OF ISSUES

    Not applicable.

IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

    Plaintiff's request that he be qualified as an "expert witness" on prison based on his experience as an inmate is denied.

ATTORNEYS' FEES

    Plaintiff is proceeding in propria persona. Defendants do not seek attorneys' fees.

TRIAL CONFIRMATION HEARING AND TRIAL

    A trial confirmation hearing is presently set for September 11, 2006 at 9:30 a.m. and for jury trial on October 17, 2006 at 9:00 a.m. before the Honorable Frank C. Damrell. However, due to calendar conflicts, these dates must be continued.

    The September 11, 2006 trial confirmation hearing is continued to Friday, March 2, 2007, at 2:30 p.m. before the Honorable Frank C. Damrell, in Courtroom #2. A writ of habeas corpus ad testificandum will issue for plaintiff's appearance by video-conferencing. At the trial confirmation hearing, the court will issue an order as to the exchange of exhibits. The parties should be prepared to identify which trial exhibits listed by opposing party, are requested prior to trial.

    The October 17, 2006 jury trial date is continued to April 3, 2007 at 9:00 a.m. in Courtroom #2 before the Honorable Frank C. Damrell. The parties have not estimated the duration of trial. The court will issue writs of habeas corpus ad testificandum for plaintiff and the two incarcerated witnesses.

PROPOSED JURY VOIR DIRE AND PROPOSED JURY INSTRUCTIONS

    The parties are directed to Local Rule 47-162(a) and Local Rule 51-163(a) for procedures and time limits regarding proposed voir dire and proposed jury instructions,

14

respectively.  The provisions of said local rules notwithstanding, the parties shall file proposed voir dire and proposed jury instructions, if any, not later than fourteen days before the date set for trial.

MISCELLANEOUS[8]

Plaintiff's present custodian shall provide for plaintiff's participation by videoconference at the trial confirmation hearing and at trial pursuant to the writs of habeas corpus ad testificandum to be issued.  All parties shall take any steps necessary to facilitate execution of said writs.  The parties and plaintiff's custodian are cautioned that sanctions will be imposed for failure to comply with court orders.

Counsel are directed to Local Rule 16-285 regarding the contents and the deadline for filing trial briefs.

OBJECTIONS TO PRETRIAL ORDER

Each party is granted fifteen days from the date of this order to file objections to same.  If no objections are filed, the order will become final without further order of this court.

DATED: August 18, 2006.

UNITED STATES MAGISTRATE JUDGE

/001; hard1518.82

---

[8] Although plaintiff listed former CDCR Director Edward S. Alameida as a defendant in his complaint, there were no charging allegations against defendant Alameida and he was apparently named solely on a theory of respondeat superior.  By order filed September 9, 2002, the court found plaintiff had not stated a cognizable claim against defendant Alameida and informed plaintiff the court would not order service of process on defendant Alameida.  Defendant Alameida was terminated from the docket on October 3, 2002.